# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| BORIS ZAVADOVSKY, *et al.*, | : | | |
| | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 24-1997 (RC) |
| | : | | |
| v. | : | | |
| | : | Re Document Nos.: | 32, 34, 38, 41, 43, |
| MARIO RABL, *et al.*, | : | | 47, 52, 53 |
| | : | | |
| | : | | |
| Defendants. | : | | |

## <u>MEMORANDUM OPINION</u>

**Granting the Austrian Defendants' Motion To Dismiss; Denying Plaintiffs' Motion to Compel; Denying Plaintiffs' Requests for Subpoenas to Issue; Granting the USSS Director's Motion To Dismiss; Denying Defendant Rowe's Motion to Stay Discovery; Denying Plaintiffs' Motion for Partial Summary Judgment; Denying the USSS Director's Motion to Stay Discovery; Denying Plaintiffs' Motion to Strike the Austrian Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment**

## I. INTRODUCTION

*Pro se* Plaintiffs Boris Zavadovsky and Elena Dvoinik ("Plaintiffs") brought this suit against "low-ranking" Austrian police officers Mario Rabl and Susanne Hoflinger (the "Austrian Defendants"), alleging that Rabl and Hoflinger contacted John Doe, a U.S. Secret Service ("USSS") agent, with falsified medical invoices and receipts containing Plaintiffs' personal data after Plaintiffs refused to pay a bribe. Plaintiffs also bring claims against USSS agent John Doe ("USSS Agent Doe") and Roland L. Rowe, Jr.,[1] Director of the USSS (the "USSS Director")

---

[1] Plaintiffs' Second Amended Complaint initially named Roland L. Rowe, Jr., then Director of the United States Secret Service, as a defendant in his official capacity. *See generally* Pls.' Verified Second Am. Compl., ECF No. 28-1. Pursuant to Federal Rule of Civil Procedure 25(d), "when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending," the officer's "successor is automatically substituted as a

(collectively, the "Federal Defendants").  Plaintiffs are seeking a declaratory judgment, injunctive relief, and compensatory and punitive damages for alleged fraud, defamation, and various alleged constitutional violations.  For the following reasons, the Austrian Defendants' motion to dismiss is granted, the USSS Director's motion to dismiss is granted, and Plaintiffs' motion for partial summary judgment is denied.

## II.  FACTUAL BACKGROUND

Plaintiffs allege that on October 1, 2021, the Austrian Defendants engaged in fraudulent and defamatory actions by contacting a USSS agent, Defendant John Doe, and falsely claiming that they were investigating Plaintiffs for tax evasion and insurance fraud in Austria.  Pls.' Verified Second Am. Compl. ¶¶ 35–41, 47–50, 56, 53, 55 ("Second Am. Compl."), ECF No. 28-1.  Plaintiffs, who have Jewish-Slavic ethnicity, also allege that the Austrian Defendants and John Doe were motivated by antisemitic and anti-Slavic beliefs.  *Id.* ¶¶ 3–4, 51–52.  Plaintiffs contend that the Austrian Defendants transmitted fabricated Microsoft Word and Excel files containing Plaintiffs' personal data, which they claim was stolen from hacked emails.  *Id.* ¶¶ 36, 51, 56, 58; Compl. ¶ 29, ECF No. 1.[2]  Further, Plaintiffs allege that the USSS conducted a warrantless search of their data from federal government data banks and unlawfully seized Plaintiffs' data.  Second Am. Compl.  ¶¶ 7, 53.  They also claim that Austrian Defendants requested that USSS Agent Doe contact U.S. institutions to verify whether certain invoices were genuinely issued; implying that if not, Plaintiffs had produced false invoices, bills, and receipts

---

party."  Because Sean M. Curran was sworn in as the Director of the USSS and assumed office on January 22, 2025, he is automatically substituted for Roland L. Rowe, Jr. as a defendant in this action.

[2] The Court considers not only the factual allegations of the Second Amended Complaint, but also the *pro se* plaintiffs' other submissions.  *See Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014) (noting "the district court's obligation to construe a pro se plaintiff's filings liberally, and to consider his filings as a whole before dismissing a complaint").

of U.S. medical doctors for tax and insurance purposes. *Id.* ¶¶ 36, 38–39, 54–55. Plaintiffs deny any illegal acts, stating that they did not produce such false documents, evade taxes, or attempt to deceive insurance companies. *Id.* ¶¶ 42–46. The Austrian Defendants reported the findings from the USSS's investigation of Plaintiffs' alleged insurance fraud to the Austrian authorities in 2022, which led to tax audits and fines. *Id*. ¶¶ 9, 11, 59, 62. Pursuant to the Freedom of Information Act ("FOIA"), Plaintiffs requested records concerning these findings from the USSS, but the agency stated that "[n]o records are available at this time" under FOIA Exemptions 5 and 7. *Id.* ¶¶ 10, 14, 63–65, 68.

As a result of these alleged harms, Plaintiffs claim to have suffered severe injury, including property loss in Austria by foreclosure, an inability to work and earn money in Florida, and reputational harm. *Id.* ¶¶ 11–12. They also assert that the Austrian Defendants' actions led to them being placed on a wanted list in Austria and resulted in damages exceeding $800,000. *Id*. ¶ 13. Plaintiffs also claim that the USSS's investigation violated their equal protection rights under the Fifth Amendment, due process rights under the Fourth and Fifth Amendments, and violated the FOIA by refusing to produce any records in response to their request for the investigation reports. *Id*. at 24–28. The high-level relevant alleged facts from the Second Amended Complaint pertaining to jurisdiction are the following: Plaintiffs reside in Florida, *id*. ¶¶ 24–25; Austrian Defendants are Austrian citizens and police officers in Austria, *id*. ¶¶ 28–29; and Plaintiffs are suing Austrian Defendants solely for fraud and defamation, *id*. ¶¶ 28–31.

For the Austrian Defendants' motion to dismiss,[3] they move to dismiss Plaintiffs' claims on the following grounds: (1) lack of personal jurisdiction, (2) lack of jurisdiction under the Act

---

[3] While the Court's analysis will focus primarily on the motion for partial summary judgment and the two motions to dismiss, it will also resolve several other motions raised by the parties. These additional motions will be addressed throughout the Opinion.

of State Doctrine (which the Court will address as a matter of res judicata), (3) failure to state a cause of action for fraud, (4) failure to timely file the claim for defamation, (5) judicial privilege, and (6) insufficient service of process.  Mot. Dismiss Second Am. Compl. by Defs. Rabl & Hoflinger ("Austrian Defs.' MTD") at 1–3, ECF No. 32.  The USSS Director also moves to dismiss Plaintiffs' claims, on the following grounds: (1) failure to effectuate proper service, (2) failure to name a proper party for the FOIA claim, (3) collateral estoppel, (4) failure to state a legally sufficient Fifth Amendment claim, (5) sovereign immunity, (6) failure to state a plausible *Bivens* claim, and (7) improper venue.  *See generally* Def. Rowe's Mot. Dismiss & Mem. Supp. Thereof ("USSS Director's MTD"), ECF No. 41.  Additionally, Plaintiffs move for partial summary judgment against the USSS Director for alleged violations of their Fourth and Fifth Amendment rights.  *See generally* Pls.' Mot. Partial Summ. J. on Fourth & Fifth Amend. Claims for Injunctive & Declaratory Relief ("Pls.' MSJ"), ECF No. 47.  These motions are ripe for this Court's review.  First, the Court will consider Plaintiffs' motion for partial summary judgment.  Then, the Court will consider the Austrian Defendants' and the USSS Director's motions to dismiss.

## III.  LEGAL STANDARDS

A *pro se* complaint is held to "less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Where the action is brought by a *pro se* plaintiff, a district court has an obligation "to consider his filings as a whole before dismissing a complaint."  *Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014) (citing to *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999)).  Although a *pro se* plaintiff's pleadings are read liberally, the same summary judgment standard applies, notwithstanding plaintiff's *pro se* status.  Fed. R. Civ. P.

56.  "Even a pro se plaintiff must meet his burden of proving that the Court has subject matter jurisdiction over the claims." *Fontaine v. Bank of Am., N.A.*, 43 F. Supp. 3d 1, 3 (D.D.C. 2014); *see also Bickford v. Gov't of U.S.*, 808 F. Supp. 2d 175, 179 (D.D.C. 2011); *Newby v. Obama*, 681 F. Supp. 2d 53, 55 (D.D.C. 2010).

## A.  Summary Judgment

Summary judgment may be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it can affect the substantive outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if sufficient evidence exists such that a reasonable jury could return a verdict for the non-moving party.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007).  The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The moving party bears the initial responsibility of identifying those portions of the record which demonstrate the absence of any genuine issue of material fact.  *Id.* at 323; Fed. R. Civ. P. 56(c)(1)(A) (noting that the movant may cite to "depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials").  In response, the non-moving party must similarly designate specific facts in the record that reveal a genuine issue that is suitable for trial.  *Celotex*, 477 U.S. at 324.  On a motion for summary judgment, the court must "eschew making credibility determinations or weighing the evidence," *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the non-moving party, *Anderson*,

477 U.S. at 255. Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

### B. Motion to Dismiss

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" to give defendants fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits but rather tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982). A court considering a motion to dismiss presumes that the complaint's factual allegations are true and construes them in the plaintiff's favor. *See, e.g.*, *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations and footnote omitted). A court need not accept a plaintiff's legal conclusions as true, *see Iqbal*, 556 U.S. at 678, nor will a court presume the veracity of legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S. at 555.

## IV.  ANALYSIS

### A.  Plaintiffs' Motion for Partial Summary Judgment

The Court will begin by resolving Plaintiffs' motion for partial summary judgment.

Plaintiffs allege that the USSS Director violated their Fourth and Fifth Amendment rights by

unlawfully assisting Austrian authorities in a criminal investigation, in violation of the USA–

Austria Mutual Legal Assistance Treaty ("MLAT"), by conducting warrantless searches and

seizures of their data and disclosing that data to foreign officials without court authorization.

Pls.' MSJ at 1; Second Am. Compl. ¶ 53.  They argue that because the USSS Director and his

agent acted without proper federal approval and in violation of constitutional protections, the

resulting evidence is tainted as "fruits of the poisonous tree" and should be declared void.  Pls.'

MSJ at 13, 15.  Plaintiffs have moved for partial summary judgment to invalidate the results of

the USSS investigation and to enjoin the USSS Director and his agents from conducting further

warrantless searches and seizures of their data.  *Id.* at 19.  Plaintiffs maintain that there is no

genuine dispute of material fact regarding these constitutional violations and that summary

judgment is therefore appropriate.  *See generally* Pls.' MSJ.  In response,[4] the USSS Director

---

[4] The Austrian Defendants also filed a response to Plaintiffs' motion for partial summary judgment, arguing that although the motion appears to be solely directed at the USSS Director, "it does make various allegations against Defendants and their Counsel, which although mostly irrelevant to the substance of the Motion, involve false statements and scurrilous attacks against Counsel and Defendants[.]"  Resp. by Defs. Rabl & Hoflinger to Pls.' Mot. Partial Summ. J. at 1, ECF No. 48.  Plaintiffs move to strike the Austrian Defendants' response, claiming that they "are not parties to the claims for which partial summary judgment is requested."  Pls.' Mot. Strike Defs.' Rabl & Hollinger Resp. at 1, ECF No. 53.  Courts have discretion to strike defenses under Rule 12(f), but such motions are "disfavor[ed]" and considered a "drastic remedy."  *Gates v. District of Columbia*, 825 F. Supp. 2d 168, 169 (D.D.C. 2011).  Because Plaintiffs' motion includes factual allegations concerning the Austrian Defendants, the Court finds that the Austrian Defendants are entitled to an opportunity to respond.  Motions to strike are typically denied unless the challenged material is "irrelevant and frivolous," and its removal would clearly streamline the litigation.  *United States ex rel. Head v. Kane Co.*, 668 F. Supp. 2d 146, 150

argues that Plaintiffs' motion is premature and requests that all proceedings be stayed pending resolution of the motions to dismiss.  The USSS Director's Combined Opp'n to Pls.' MSJ & Mot. Stay (the "USSS Director's Mot. Stay"), ECF No. 52.  The USSS Director urges the Court to stay proceedings in the interest of judicial economy, arguing that resolution of the dispositive motions to dismiss could eliminate the need for further litigation.  USSS Director's Mot. Stay at 2–3.[5]

Without considering the merits of the motion, the Court finds that it is premature to resolve Plaintiffs' motion for partial summary judgment.  First, the Court has not yet ruled on the Austrian Defendants' and the USSS Director's motion to dismiss.  "[I]n the interest of judicial economy, [c]ourts will stay summary judgment briefing pending the resolution of a motion to dismiss."  *See West Virginia ex rel. Morrisey v. United States Dep't of Health and Hum. Servs.*, No. 14-cv-1287, 2014 WL 12803229, at *1 (D.D.C. Nov. 3, 2014) (citation omitted).  This "will allow the parties to avoid the unnecessary expense, the undue burden, and the expenditure of time to brief a motion that the Court may not decide."  *Furniture Brands Int'l, Inc. v. U.S. Int'l Trade Comm'n*, No. 11-cv-202, 2011 WL 10959877, at *1 (D.D.C. Apr. 8, 2011).  Although the Court will not stay the proceedings at this juncture because it will address the pending motions to dismiss in the subsequent sections of this Opinion, it recognizes that ruling on a motion for partial summary judgment while motions to dismiss are still pending is not in the interest of judicial economy.  "This Court's general practice is to adhere to the traditional litigation

---

(D.D.C. 2009).  Those circumstances are not present in this case, and as such, the Court denies Plaintiffs' motion to strike.

[5] Because the Court will resolve the two pending motions to dismiss in this Opinion, the USSS Director's requests to stay all proceedings pending the resolution of the dispositive motions are now moot.  Accordingly, the Court denies both of the USSS Director's motions to stay.  *See* Def. Rowe's Combined Opp'n to Pls.' Mot. Compel & Mot. Stay Disc. & Mem. in Supp. Thereof, ECF No. 43; *see also* USSS Director's Mot. Stay.

sequence of complaint; answer or motion to dismiss; discovery, if appropriate; and only then, summary judgment." *Comm. on Ways & Means, U.S. House of Representatives v. U.S. Dep't of the Treasury*, No. 19-cv-1974, 2019 WL 4094563, at *2 (D.D.C. Aug. 29, 2019). "This process allows the Court to assure itself of jurisdiction and address threshold matters" before turning to the other issues in the litigation. *Id.* Additionally, the parties have not had a full and fair opportunity to conduct discovery in this action. "Summary judgment is premature unless all parties have had a full opportunity to conduct discovery." *Convertino v. U.S. Dep't of Just.*, 684 F.3d 93, 99 (D.C. Cir. 2012) (citation modified). Additionally, Plaintiffs' motion for partial summary judgment raises factual issues that are likely to be informed by discovery that has not yet taken place. Accordingly, the Court will deny the motion for partial summary judgment.

### B. Austrian Defendants' Motion to Dismiss

Next, the Court will turn to the merits of the Austrian Defendants' motion to dismiss. The Austrian Defendants move to dismiss Plaintiffs' claims on the following grounds: (1) lack of personal jurisdiction, (2) lack of jurisdiction under the Act of State Doctrine (which the Court will treat as barred by res judicata), (3) failure to state a cause of action for fraud, (4) failure to timely file the claim for defamation, (5) judicial privilege, and (6) insufficient service of process. Austrian Defs.' MTD at 1–3. The Court will now consider their arguments in turn.

#### 1. Personal Jurisdiction

First, the Austrian Defendants argue that the claims against them must be dismissed because this Court does not have personal jurisdiction over them. *See* Austrian Defs.' Mem. P. & A. in Supp. Mot. Dismiss Second Am. Compl. ("Austrian Defs.' MTD Mem.") at 9–11, ECF No. 33. For the reasons set forth below, the Court agrees.

Plaintiffs bear the burden of establishing a basis for personal jurisdiction. *See Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990). "A plaintiff makes such a showing by alleging specific acts connecting the defendant with the forum." *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 121 (D.D.C. 2000) (citing *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787 (D.C. Cir. 1983)). Specific jurisdiction over a non-resident defendant is appropriate where "there was 'some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (alteration in original) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

"A federal court normally looks . . . to the long-arm statute of the State in which it sits to determine whether" exercise of personal jurisdiction is warranted. *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 105 (1987). If a court finds that the long-arm statute applies, it then determines whether "an exercise of jurisdiction would comport with constitutional limitations." *Forras v. Rauf*, 812 F.3d 1102, 1105–06 (D.C. Cir. 2016) (citation omitted). In the District of Columbia, "[t]o establish personal jurisdiction over a non-resident, a court must engage in a two-part inquiry: [a] court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). The District of Columbia's long-arm statute provides, in relevant part, that a D.C. court has personal jurisdiction over a person or entity as to any claim for relief arising from the person:

> (1) transacting any business in the District of Columbia; . . . (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any

other persistent course of conduct, or derives substantial revenue from goods used
or consumed, or services rendered, in the District of Columbia[.]

D.C. Code § 13-423(a).  Subsection (b) of the statute further qualifies the application of

jurisdiction over a non-resident defendant to only those "claim[s] for relief arising from acts

enumerated in this section," *id.* § 13-423(b), thus requiring the minimum contacts that form the

basis for a plaintiff's jurisdictional allegations to originate from the same acts giving rise to the

claims asserted in their complaint.  *See Willis v. Willis*, 655 F.2d 1333, 1336 (D.C. Cir. 1981);

*Toumazou v. Turkish Republic of N. Cyprus*, 71 F. Supp. 3d 7, 15 (D.D.C. 2014).

     To satisfy the due process requirements, a plaintiff must show the existence of "minimum

contacts" between the defendant and the forum to a sufficient degree that "the maintenance of

the suit does not offend traditional notions of fair play and substantial justice."  *GTE New Media*,

199 F.3d at 1347 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  This

requires that the "defendant's contacts with the forum are of such a quality and nature that they

manifest a deliberate and voluntary association with the forum" and are not merely "fortuitous."

*Mouzavires v. Baxter*, 434 A.2d 988, 995 (D.C. 1981).  This ensures that "the defendant's

conduct and connection with the forum state are such that he should reasonably anticipate being

haled into court there."  *GTE New Media Servs. Inc.*, 199 F.3d at 1347 (quoting *World-Wide

Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

     Plaintiffs argue that D.C. has jurisdiction over the Austrian Defendants under the long-

arm statute because they "committed two tortious acts in Washington, D.C.: fraud and

defamation, while acting through their agent[], unknown [USSS] agent[] John Doe."  Pls.' Resp.

to Defs.' Rabl & Hofflinger's Mot. Dismiss Second Am. Compl. ("Pls.' Opp'n to Austrian Defs.'

MTD") at 5, ECF No. 39.  Plaintiffs further argue that the Austrian Defendants "purposefully

availed [themselves]" of D.C. benefits and conducted business in D.C. because John Doe served

them as their agent for "private investigator activities." *Id.* at 5–6 (citing to *Media Matters for Am. v. Paxton*, 732 F. Supp. 3d 1, 18 (D.D.C. 2024) (citation modified)). The Austrian Defendants assert (and Plaintiffs do not contest) that they have never been to D.C. and performed all alleged actions in Austria as part of their official duties. They argue that the alleged injury to Florida resident Plaintiffs did not occur in the District and the sole alleged contact—contacting a U.S. Secret Service agent in D.C. via telephone or email from Austria—also does not qualify as an act within the District. Reply by Defs. Rabl & Hoflinger to Pls.' Resp. to Mot. Dismiss Second Am. Compl. ("Austrian Defs.' MTD Reply") at 2, 6–7, ECF No. 40.

The Court agrees with the Austrian Defendants that it lacks personal jurisdiction over them. Plaintiffs do not satisfy any of the enumerated grounds for jurisdiction under D.C. Code Ann. § 13-423(a). To begin, the Austrian Defendants do not transact any business in the District of Columbia. D.C. Code § 13-423(a)(1). Plaintiffs compare this case with *Media Matters* by claiming that the Austrian Defendants' procurement of John Doe's investigative services in D.C. suffices to establish that the Austrian Defendants transacted business in D.C., meeting the long-arm statute's requirement. *See* Pls.' Opp'n to Austrian Defs.' MTD at 5–6. Whereas in *Media Matters* the defendant's hiring of an in-forum agent directly caused the plaintiff's injury, *Media Matters*, 732 F. Supp. 3d at 18–20, Plaintiffs here do not provide evidence that USSS Agent Doe's cooperation with the Austrian Defendants' investigation in D.C. turned him into the Austrian Defendant's agent. *See* Austrian Defs.' MTD Reply at 5–6. Thus, Plaintiffs have not satisfied the first provision of the long-arm statute.

Nor have Plaintiffs established the third provision. Plaintiffs, as Florida residents, have also not alleged any "tortious injury" occurring within the District of Columbia, nor have they claimed any "act[s] or omission[s]" by Austrian Defendants within the District. D.C. Code § 13-

423(a)(3).  Plaintiffs only claim that the Austrian Defendants committed a tortious injury against Plaintiffs in the District Columbia based on alleged telephone calls and e-mails sent from Austria to Secret Service employees in the District of Columbia.  Pls.' Opp'n to Austrian Defs.' MTD at 5–6.  However, "plaintiffs' reliance on the 'tortious activity' provision of the D.C. long-arm statute is misplaced because that provision applies only where the alleged misconduct took place in the District."  *Capel v. Capel*, 272 F. Supp. 3d 33, 40 (D.D.C. 2017).  Plaintiffs do not contest that the Austrian Defendants were never physically present in D.C.  Instead, Plaintiffs argue that sending the allegedly tortious communications into D.C. amounts to misconduct in D.C.  Pls.' Opp'n to Austrian Defs.' MTD at 5–7.  But the fact that the Austrian Defendants allegedly contacted a USSS agent in the District of Columbia via telephone calls and e-mails sent from Austria does not constitute an act or omission in the District of Columbia.  *See Slate v. Kamau*, No. 20-cv-3732, 2021 WL 3472438, at *6 (D.D.C. Aug. 6, 2021) (holding that mailing a letter or other material into D.C. from outside of the District does not qualify as an act in the District); *Sec. Bank, N.A. v. Tauber*, 347 F. Supp. 511, 516–517 (D.D.C. 1972) (finding that two phone calls from Florida were the acts of defendant in Florida, not an act or omission in the District of Columbia).  There is no reason to not apply the same standard to emails.

Having not established personal jurisdiction under the D.C. long-arm statute, the inquiry can end.  *Hindu Am. Found. v. Viswanath*, 646 F. Supp. 3d 78, 95 (D.D.C. 2022) ("Because [plaintiff] has not satisfied the D.C. long-arm statute, this court 'need not reach the constitutional portion of the analysis.'" (quoting *Bauman v. Butowsky*, 377 F. Supp. 3d 1, 6 (D.D.C. 2019)).  But Plaintiffs also fail to establish that personal jurisdiction satisfies the constitutional requirements of due process.  That is because the Austrian Defendants also lack the requisite minimum contacts to this District to be subject to personal jurisdiction in this Court.  *See Int'l*

*Shoe Co.*, 326 U.S. at 316.  The Austrian Defendants' alleged conduct does not demonstrate a deliberate association with the District of Columbia.  As set forth above, the Austrian Defendants' conduct is not sufficiently connected to the District of Columbia.  And Plaintiffs' claimed injury—loss of property in Austria, inability to work in Florida, and reputational harm in Florida—falls outside the District as well.  *See* Austrian Defs.' MTD Mem. at 10.  All of the alleged conduct and injuries occurred outside of the District, which is insufficient to establish personal jurisdiction.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)).  As such, the Austrian Defendants could not reasonably anticipate being "haled" into court in the District, and this Court finds that it does not have personal jurisdiction over them.  *See World-Wide Volkswagen Corp.*, 444 U.S. at 297.

### 2. Act of State Doctrine

Even if this Court could exercise personal jurisdiction over the Austrian Defendants, Plaintiffs' claims against them fail for additional, independently sufficient reasons.  The Austrian Defendants argue that all of Plaintiffs' allegations against them are barred by the act of state doctrine.  *See* Austrian Defs.' MTD Mem. at 11–13.  Because other federal courts in the 11th Circuit have rendered decisions regarding the application of the act of state doctrine to Plaintiffs' identical claims in those courts, this Court will address this as a matter of res judicata.  *See Dvoinik v. Philipp* (*Dvoinik I*), No. 22-cv-1127, 2023 WL 4305213 (M.D. Fla. June 30, 2023)[6]; *see also Dvoinik v. Philipp* (*Dvoinik II*), No. 23-cv-12240, 2024 WL 95440 (11th Cir. Jan. 9, 2024).  The Court agrees that Plaintiffs' claims against the Austrian Defendants are barred by the act of state doctrine.

---

[6] This order was the district court's second order in the action, where it granted the defendants' motion to dismiss with prejudice.

"The doctrine of res judicata prevents repetitious litigation involving the same causes of action or the same issues." *I.A.M. Nat'l Pension Fund, Benefit Plan A v. Indus. Gear Mfg. Co*., 723 F.2d 944, 946 (D.C. Cir. 1983). In other words, it bars "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001); *see Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("Under res judicata, a final judgment on the merits of an action precludes parties or their privies from relitigating issues that were or could have been raised in that action." (citing *Cromwell v. Cnty. of Sac*, 94 U.S. 351, 352 (1876))). "Under the doctrine of res judicata, or claim preclusion, a subsequent lawsuit will be barred if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006). Res judicata serves "to conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and to prevent . . . piecemeal litigation." *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981); *see also Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (same).

Before filing this action, Plaintiffs filed a civil Racketeer Influenced and Corrupt Organizations Act ("RICO") complaint against the Austrian Defendants in the Middle District of Florida for theft, extortion attempt, and tampering with the victims. Compl. ¶ 41. The Middle District of Florida dismissed the case and the United State Court of Appeals for the Eleventh Circuit affirmed. The dismissed claims arose from the same alleged conduct underlying the claims in this action. *See Dvoinik I*, 2023 WL 4305213; *Dvoinik II*, 2024 WL 95440. In affirming the dismissal, the Eleventh Circuit explained:

> [T]he district court did not err in dismissing Plaintiffs' complaint with prejudice under the act of state doctrine. Plaintiffs' complaint almost exclusively concerns events that they alleged happened in Austria and that were performed in an alleged scheme by Austrian law enforcement, the Austrian prosecutor, defense counsel, and the Austrian judiciary. The only link this case has to the United States is that the named Plaintiffs happen to reside in Florida. Yet Plaintiffs seek to have United States courts determine the validity of Austrian officials' actions in Austria, which the act of state doctrine prohibits.

*Dvoinik II*, 2024 WL 95440, at *4 (citation omitted). The Eleventh Circuit further held that "[t]he alleged acts of Defendants, whether valid or not, were ostensibly exercises of Austrian police power, [and] were carried out entirely within Austria . . . ." *Id.*

This Court finds that it is bound by res judicata to the Eleventh Circuit's decision regarding Plaintiffs' fraud and defamation claims. "Whether two cases implicate the same cause of action turns on whether they share the same 'nucleus of facts.'" *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984)). "[I]t is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies." *Page*, 729 F.2d at 820 (quoting *Expert Elec., Inc. v. Levine*, 554 F.2d 1227, 1234 (2d Cir. 1977)). The prior litigation involved the same parties and addressed the same claims. *See Dvoinik I*, 2023 WL 4305213; *Dvoinik II*, 2024 WL 95440. In the prior action, Plaintiffs' "lawsuit concern[ed] the activities of Austrian law enforcement . . . [and] [t]he conduct at issue include[d] . . . providing information to and requesting information from other governmental agencies and other entities and individuals[.]" *Dvoinik v. Philipp*, No. 22-cv-1127, 2023 WL 2527009, at *4 (M.D. Fla. Mar. 15, 2023).[7] Similarly, Plaintiffs' claims in this action include allegations that the Austrian Defendants made false statements about Plaintiffs, transmitted fabricated electronic files, and spread defamatory

---

[7] This order was the district court's first order in the action, where it granted the defendants' motion to dismiss without prejudice.

statements about Plaintiffs to the USSS and Austrian authorities. *Id*.; *Apotex, Inc. v. Food & Drug Admin.*, 393 F.3d 210, 217–18 (D.C. Cir. 2004) (holding that simply raising a new legal theory without alleging new facts is barred by res judicata). The prior case resulted in a final, valid judgment on the merits. *See Dvoinik I*, 2023 WL 4305213; *see also Dvoinik II,* 2024 WL 95440. The Eleventh Circuit affirmed the Florida district court's dismissal of Plaintiffs' complaint with prejudice, based on its analysis of the act of state doctrine. *Id*. "A judgment on the merits is one that 'reaches and determines the real or substantial grounds of action or defense as distinguished from matters of practice, procedure, jurisdiction[,] or form.'" *Sheppard v. District of Columbia*, 791 F. Supp. 2d 1, 7 (D.D.C. 2011) (quoting *Saylor v. Lindsley*, 391 F.2d 965, 968 (2d Cir. 1968) (internal citations omitted)); *see also Nwachukwu v. Karl*, 222 F.R.D. 208, 212 (D.D.C. 2004). The Eleventh Circuit, "a court of competent jurisdiction," adjudicated the case when it reviewed an appeal from the Florida district court and affirmed the district court's holding. *Smalls*, 471 F.3d at 192; *see also Dvoinik II*, 2024 WL 95440, at *4. Accordingly, all four requirements needed to justify res judicata are satisfied, and this Court is bound by the Eleventh Circuit's decision dismissing Plaintiffs' claims. Therefore, the Court finds that the claims arising out of the Austrian Defendants' alleged acts are dismissed on the basis of res judicata.

### 3. Failure to State a Cause of Action for Fraud

While the Court finds that Plaintiffs' claims fail on the two other grounds set forth above, the Court nonetheless agrees that Plaintiffs also fail to state a cause of action for fraud. Plaintiffs allege that the Austrian Defendants made deliberately false statements about alleged criminal investigations against Plaintiffs, transmitted fabricated electronic Microsoft Word and Excel files, and spread defamatory statements about Plaintiffs to the USSS and Austrian authorities.

Pls.' Opp'n to Austrian Defs.' MTD at 2–4.  However, the Austrian Defendants contend that those statements and affidavits conveyed to third parties (i.e., the USSS and Austrian authorities) do not constitute fraud because they were not made to Plaintiffs and Plaintiffs did not rely upon them.  *See* Austrian Defs.' MTD Mem. at 14–15.  The Court agrees with the Austrian Defendants.

Under D.C. law, the essential elements of fraud are: (1) a false representation (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action taken in reliance upon the representation.  *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 438 (D.C. 2013).  Common-law fraud is governed by the heightened pleading standard imposed by Rule 9(b).  *McMullen v. Synchrony Bank*, 164 F. Supp. 3d 77, 95 (D.D.C. 2016).  Rule 9(b) "requires particularity when pleading 'fraud or mistake,' while allowing '[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally.'"  *Iqbal*, 556 U.S. at 686 (quoting Fed. R. Civ. P. 9(b)).  To satisfy this pleading standard in a fraud claim, a plaintiff must identify "who precisely was involved in the fraudulent activity," the "time, place, and content of the false misrepresentations," the "fact misrepresented," and "what was retained or given up as a consequence of the fraud."  *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256–59 (D.C. Cir. 2004) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss.  *Iqbal*, 556 U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of the legal conclusions that are couched as factual allegations.  *See Twombly*, 550 U.S. at 555.

The Court finds that Plaintiffs have failed to state a cause of action for fraud.  As the Austrian Defendants argue, Plaintiffs' Second Amended Complaint lacks the specificity required by Rule 9(b), as they have failed to allege any direct fraudulent statements the Austrian Defendants made to them upon which they relied.  Instead, their allegations primarily involve statements made by the Austrian Defendants to the USSS and the Austrian authorities, and they do not address nor satisfy any of the elements of fraud.  *See* Second Am. Compl. ¶¶ 4–5, 9, 35–51, 59.  Such reliance by "third parties cannot, standing alone, satisfy the detrimental reliance element required for fraud claims under D.C. law."  *Busby v. Capital One, N.A.*, 772 F. Supp. 2d 268, 281–282 (D.D.C. 2011).  Statements made to third parties do not constitute fraud unless they were intended to reach the claimant and the claimant relied on them to their detriment. *Boomer Dev., LLC v. Nat'l Ass'n of Home Builders of the U.S.*, 325 F.R.D. 6, 14 (D.D.C. 2018) (holding that defendants may be held liable "if plaintiff 'can establish that he relied upon . . . [the misrepresentation] to his detriment, and that defendants intended the misrepresentation to be conveyed to him.'" (quoting *Mills v. Cosmopolitan Ins. Agency, Inc.*, 424 A.2d 43, 49 (D.C. 1980) (citation modified))).  Here, the allegedly false statements and documents were directed solely to the USSS, not Plaintiffs.  Plaintiffs did not receive nor rely upon them, and the elements necessary to extend liability for fraud to a third party are absent in this case.  Thus, in addition to the other grounds for dismissal, Plaintiffs' fraud claims are also dismissed because they fail to adequately state a cause of action.

### 4.  Failure to State a Timely Claim for Slander/Defamation

The Austrian Defendants also argue that the statute of limitations for Plaintiffs' slander/defamation claim has expired and that the claim should be dismissed as a result.  The statute of limitations for defamation claims in the District of Columbia is one year, and it begins

to run at the time the defamatory statement is published.  *See* D.C. Code § 12–301(4).  As such, any claim for defamation must be brought within one year from the time the action accrues.  *Id*. "[D]efamation occurs on publication, and the statute of limitations runs from the date of publication.  Where a statement is defamatory on its face, the plaintiff's reputation is damaged immediately upon publication."  *Mullin v. Washington Free Weekly, Inc.*, 785 A.2d 296, 298 (D.C. 2001) (quoting *Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 882 (D.C. 1998) (citations omitted)).

Plaintiffs assert that they first found out about the report on January 11, 2024, from the Austrian Defendants' counsel.  Pls.' Opp'n to Austrian Defs.' MTD at 9–10.  However, Plaintiffs knew about the report as early as March and April 2023 given that they filed it in their Complaint, *see* Ex. 1 to Compl., ECF No. 1-1, and in their federal cases in other district courts as early as April 2023.  *See, e.g.*, Second Am. Compl. ¶¶ 145, 171, *Dvoinik I*, ECF No. 76 (alleging that there were "false statements to John [Doe] with using fabricated evidence").  "[T]he statute of limitations will not run until plaintiffs know or reasonably should have known that they suffered injury due to the defendants' wrongdoing."  *See Gonzalez Ramos v. ADR Vantage, Inc.*, No. 18-cv-1690, 2021 WL 4462611, at *6 (D.D.C. Sep. 29, 2021), *aff'd sub nom.*, *Ramos v. ADR Vantage, Inc.*, No. 21-cv-7124, 2022 WL 17726704 (D.C. Cir. Dec. 16, 2022) (quoting *McFadden v. Wash. Metro. Area Transit Auth.*, 949 F. Supp. 2d 214, 221 (D.D.C. 2013)).  Here, the alleged defamatory statements were made in October 2021 and the report to the Austrian authorities based on the alleged defamatory statements was made in January 2022.  *See* Austrian Defs.' MTD Mem. at 15.  At minimum, because Plaintiffs had reason to know about the investigations and alleged defamatory statements as early as March and April 2023 given that is when they filed their first complaint in the Middle District of Florida, the one-year statute of

limitations expired before the filing of this case in July 2024. As such, in addition to the Court's

prior rulings for dismissal based on other grounds, the Court also finds that Plaintiffs'

slander/defamation claim is untimely, and this claim is dismissed on this basis as well.

5. Service of Process

Lastly,[8] the Austrian Defendants argue that an additional basis for dismissal is that

Plaintiffs never properly served them with process in this action. Austrian Def.'s MTD Mem. at

18–19. They argue that all forms of service have been improper under Federal Rule 4(f). *Id.* at

19. The Austrian Defendants contend that Plaintiffs did not effect service through diplomatic

channels for service when they emailed the Austrian Ministry of Interior with copies to Austrian

Defendants because this was not an "'internationally agreed means' of service" and violated

Federal Rule 4(f)'s requirements for service on foreign persons. *Id.* at 19–20 (quoting Fed. R.

Civ. P. 4(f)). In response, Plaintiffs argue that the Austrian Defendants received fair notice of

Plaintiffs' claims. Pls.' Opp'n to Austrian Defs.' MTD at 17–18; *see also* Aff., ECF No. 8;

Notice of Appearance, ECF No. 3; Mot. *Pro Hac Vice* Admission of Dale F. Webner, ECF

No. 4. Plaintiffs also note that they made their best efforts to serve the Austrian Defendants, but

Plaintiffs faced opposition from the Republic of Austria and its ministries. Pls.' Opp'n to

Austrian Defs.' MTD at 17–18. They further argue that the United States "does not recognize

---

[8] The Austrian Defendants also contend that Plaintiffs abandoned some of their claims from the original Complaint, where they argued that "much of the fraud and defamation occurred in the arguments, documents filed, and statements in or related" to prior federal cases. Austrian Defs.' MTD Mem. at 18; *see* Second Am. Compl. ¶¶ 67, 76 (allegations of unlawfully obtaining a private email and threats from the Austrian Defendants' counsel). However, Defendants argue that some allegations in the Second Amended Complaint may still be protected by judicial privilege. Austrian Defs.' MTD Mem. at 18. Although Plaintiffs removed those claims from the original Complaint when they amended their complaint, the Court finds that those claims that arose in the *Dvoinik I* and *Dvoinik II* legal filings (rather than communication pre-dating that litigation) are likely barred by judicial privilege as well.

Austria's reservation to the Hague Convention" in relation to service processed through diplomatic channels, and that they served Austrian Defendants using methods available to Plaintiffs. *Id.* at 18. The Austrian Defendants have the better argument.

A federal court may assert personal jurisdiction over a defendant only if "'the procedural requirements of effective service of process are satisfied.'" *Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012) (citation omitted). Service of process "'notif[ies] a defendant of the commencement of an action against him'" and "'marks the court's assertion of jurisdiction over the lawsuit.'" *Mann*, 681 F.3d at 372 (quoting *Okla. Radio Assocs. v. FDIC*, 969 F.2d 940, 943 (10th Cir. 1992)). "The plaintiff bears the burden of establishing . . . proper service of process." *Klayman v. Obama*, 125 F. Supp. 3d 67, 77 (D.D.C. 2015) (citing *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987)). The Austrian Defendants argue that Plaintiffs' attempts to serve them were contrary to the requirements of Federal Rule of Civil Procedure 4(f), which governs service of individuals in a foreign country. *See* Austrian Defs.' MTD Mem. at 19. Under Rule 4(f), unless federal law provides otherwise, an individual may be served at a place not within any judicial district of the United States:

> (1) by any international agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>> (C) unless prohibited by the foreign country's law, by:
>>> (i) delivering a copy of the summons and of the complaint to the individual personally; or
>>> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).  "[S]ervice by mail is permissible if two conditions are met: first, the

receiving state has not objected to service by mail; and second, service by mail is authorized

under otherwise-applicable law."  *Water Splash, Inc. v. Menon*, 581 U.S. 271, 284 (2017).

The Court finds that Plaintiffs have not made reasonable efforts to serve Austrian

Defendants in compliance with Rule 4(f).  There is no "internationally agreed means of service"

applicable in this case.  *See Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353

F.3d 916, 922 (11th Cir. 2003).  "Although Austria is a party to the Hague Convention on Civil

Procedure, the United States is not."  *Freedom Watch, Inc. v. Org. of Petroleum Exporting

Countries*, 766 F.3d 74, 79 (D.C. Cir. 2014).  "Conversely, although the United States is a part of

the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents, Austria is

not."  *Id.*; *Prewitt Enters., Inc.*, 353 F.3d at 922 n.10.  In Austria, service of process is considered

a sovereign act; and unlike in the United States, service of a complaint (regardless of the sender)

is a judicial act that may be exerted only by a court unless an international convention provides

specifically for the opposite.  Zustellgesetz [Service of Documents Act] Bundesgesetzblatt

[BGBl] No. 200/1982, as amended, §§ 1, 12(1), https://perma.cc/PNE2-499T (Austria).

Here, no such international convention exists; and because Austrian courts were not

involved with Plaintiffs' efforts to serve Austrian Defendants in Austria, those attempts were not

"prescribed by" Austrian law governing service of process.  Fed. R. Civ. P. 4(f)(2)(A).

The remainder of Rule 4(f)(2) is not applicable to Plaintiffs' attempts to serve the

Austrian Defendants.  Plaintiffs do not claim that there was any "letter rogatory or letter of

request" here—or any response to any letter—as is required for service under Rule 4(f)(2)(B).

For Rule 4(f)(2)(C), "its provisions are inapplicable to methods of service, like those attempted

by [Plaintiffs], "prohibited by the foreign country's law."  Nonetheless, there is no evidence of compliance with its requirements—i.e., that Austrian Defendants were served via personal delivery or that a court's clerk addressed and dispatched the mailing or that it required a signed receipt.  The final provision of Rule 4(f) allows service "by other means not prohibited by international agreement, as the court orders."  Fed. R. Civ. P. 4(f)(3) (emphasis added).  To validly effectuate service under Rule 4(f)(3), a plaintiff must affirmatively seek and obtain the district court's authorization for a particular means of service.  *See, e.g.*, *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1013–14 (9th Cir. 2002).  Here, however, Plaintiffs neither sought nor secured the Court's authorization to serve Austrian Defendants.  As a result, Plaintiffs' attempts to effectuate service of process on Austrian Defendants failed to satisfy Rule 4(f)(3), and Rule 4(f) more generally.

Because they are unable to demonstrate adequate compliance with Rule 4(f), Plaintiffs defend their attempted methods of service by claiming that Austrian Defendants' attorney, who represents them in all related cases, has appeared in this action.  Pls.' Opp'n to Austrian Defs.' MTD at 17; *see also* Notice of Appearance; Mot. *Pro Hac Vice* Admission of Dale F. Webner.  However, "before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant."  *Omni Cap. Int'l, Ltd.*, 484 U.S. at 104.  Although notice is "[a]n elementary and fundamental requirement of due process," *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950), it "cannot by itself validate an otherwise defective service." *Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 492 (3d Cir. 1993).  In certain circumstances where service of process was "in substantial compliance with the formal requirements of the Federal Rules," courts have considered actual notice in evaluating whether service was proper despite a minor, nonprejudicial defect.  *Prewitt Enters., Inc.*, 353 F.3d at 924

n.14 (collecting cases).  Here, there was no substantial compliance with the requirements of Rule 4, and Plaintiffs have failed to effectuate valid service of process on Austrian Defendants. However, a failure to properly serve a defendant can be cured.  *See Ning Ye v. Holder,* 644 F. Supp. 2d 112, 115 (D.D.C. 2009) ("[P]ro se litigants are allowed more latitude than litigants represented by counsel to correct defects in service of process and pleadings . . . .") (quoting *Moore v. Agency for Int'l Dev.*, 944 F.2d 874, 876 (D.C. Cir. 1993)).  Although the Court recognizes that proper service could potentially be cured, given the many other bases to dismiss all claims against the Austrian Defendants, there is no reason to allow Plaintiffs to cure the defects in their attempt to serve the Austrian Defendants.[9]

### C.  The USSS Director's Motion to Dismiss

The Court now turns to the second motion to dismiss, which has been filed by the USSS Director and is also ripe for review.  The USSS Director moves to dismiss Plaintiffs' claims on the following grounds: (1) failure to effectuate service, (2) failure to name a proper party for their FOIA claim, (3) claims barred by collateral estoppel, (4) sovereign immunity, (5) failure to state a legally sufficient Fifth Amendment claim, (6) failure to state a plausible claim that does not warrant extending *Bivens*, and (7) improper venue.  USSS Director's MTD at 1–2.  Similar to the Austrian Defendants' motion to dismiss, the Court will consider each of the USSS Director's arguments individually.

---

[9] Because the Court grants the Austrian Defendants' motion to dismiss, it denies Plaintiffs' motion to compel a Rule 26(f) pre-discovery conference, *see* Pls.' Mot. Compel Mandatory R. 26 Conf., ECF No. 34, having determined that there are no claims left to litigate. On the same basis, the Court also denies Plaintiffs' Request for Subpoenas to Issue for Dale F. Webner and Elke Ursula Rolff.  *See* ECF No. 38.

### 1. Improper Service

First, the Court will consider whether Plaintiffs effectuated proper service on the USSS Director.  The USSS Director contends that Plaintiffs' complaint should be dismissed for insufficient service of process because they personally attempted to serve him by certified mail only to the United States Attorney's Office, and Plaintiffs have yet to perfect service of the summons within 90 days of filing a complaint.  USSS Director's MTD at 6–7.  In response, Plaintiffs claim that the Federal Defendants were properly served under Federal Rule 4(i) via certified mail.  Pls.' Resp. to Rowe's Mot. Dismiss Second Am. Compl. ("Pls.' Opp'n to USSS Director's MTD") at 2, 5, ECF No. 44.  Plaintiffs note that they made their best efforts to serve the Federal Defendants via a licensed process server, but the Federal Defendants rejected it, and that USSS Agent Doe could not be served due to the Federal Defendants' refusal to reveal his or her identity.  *Id.* at 5.

Under Rule 4(c), summons and complaint must be served by "any person who is . . . not a party."  Fed R. Civ. P. 4(c)(1)–(2).  Under Rule 4(i)(1), effectuating service on the United States must meet the following requirements:

> (A)(i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought—or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk—or
> (ii) send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;
>
> (B) send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; and
>
> (C) if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.

Fed. R. Civ. P. 4(i).  And under Rule 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that

defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). "But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.*

The Court finds that Plaintiffs have made reasonable efforts to serve the Federal Defendants in compliance with Rule 4(i). Plaintiffs contend that they effected service because they personally sent certified mail to the United States Attorney's Office, the Attorney General of the United States, and the USSS. *See* Ex. 1 to Pls.' Opp'n to the USSS Director's MTD, ECF No. 44-1. While Plaintiffs have followed the requirements under Rule 4(i)(1), the Court has held that the rule "must be read in conjunction with the restrictions set out in Rule 4(c)(2)," which requires that a summons and complaint be served by "*any person who is not a party.*" *Smith v. United States*, 475 F. Supp. 2d 1, 9 (D.D.C. 2006) (emphasis in original) (citation modified). Given that Plaintiffs effected service themselves by sending the summons and complaint to all the required parties, they have not complied with Rule 4(c)(2). However, Plaintiffs are proceeding *pro se* and should be "allowed more latitude than litigants represented by counsel to correct defects in service of process and pleadings." *Moore*, 994 F.2d at 876. The service requirements "should not be enforced with draconian rigidity where courts have not first informed *pro se* plaintiffs of the consequences of failing to effect proper service and where defendants are in no material way prejudiced by a minor defect in the manner in which service of process was attempted." *Lindsey v. United States*, 448 F. Supp. 2d 37, 47 n.6 (D.D.C. 2006). Therefore, "given the rather insignificant defect in service, the traditional leniency granted to *pro se* plaintiffs, and the fact that [the USSS Director] clearly has notice of this action," the Court shall not dismiss the claims against the USSS Director based on improper service of process and

27

instead turns to the USSS Director's other arguments, "which ultimately strike at the merits of Plaintiffs' claims." *Smith*, 475 F. Supp. 2d at 11.

## 2. *Bivens* Claims

Apart from arguing that Plaintiffs did not effectuate proper service on the Federal Defendants, the USSS Director also argues that the Second Amended Complaint did not state a plausible claim for relief against the John Doe Federal Defendants when it sought to expand *Bivens* beyond its specific context. In Counts I, II, III, and IV,[10] Plaintiffs argue they are entitled to monetary damages from the John Doe Federal Defendants under *Bivens* for violation of their Fourth and Fifth Amendment rights. Second Am. Compl. at 24–27; Pls.' Opp'n to USSS Director's MTD at 17–18. The USSS Director counters that, "even if the Court had personal jurisdiction over [the Federal Defendants,] . . . any attempt to further amend the complaint would be futile" because Plaintiffs' claims do not warrant extending *Bivens* beyond its context. USSS Director's MTD at 17. In *Bivens*, the Supreme Court held that an individual may bring an action for damages against "a federal agent acting under color of his authority" for alleged constitutional violations. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971). To state a *Bivens* claim, a plaintiff must "plead that each Government-official defendant, through his own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 663. In other words, a plaintiff must plead facts that, when

---

[10] In their Second Amended Complaint, Plaintiffs do not specify *Bivens* claims in Count IV; however, the Court recognizes that this count alleges constitutional violations under the Fifth Amendment and, in their prayer for relief, Plaintiffs seek compensatory and punitive damages for Counts I through IV from the John Doe Federal Defendants in their personal capacities. Accordingly, the Court will interpret the Second Amended Complaint as asserting *Bivens* claims in Counts I, II, III, and IV.

accepted as true, show that the named defendants, who are federal agents, were personally involved in the violation of plaintiff's constitutional rights.

The USSS Director argues that the Court should not imply a *Bivens* action in Plaintiffs' complaint because the claims seek to expand *Bivens* to a novel context. USSS Director's MTD at 19–21. The Supreme Court has cautioned courts on approving *Bivens* actions and considers it a "'disfavored' judicial activity." *Ziglar v. Abbasi*, 582 U.S. 120, 121 (2017) (quoting *Iqbal*, 556 U.S. at 675). The Supreme Court has established a two-part test to determine whether to extend a *Bivens* remedy. *See id.* at 122, 138. "First, we must consider whether the plaintiff seeks to extend *Bivens* into a 'new context.' If so, we then must consider whether there are any 'special factors counselling hesitation.'" *Loumiet v. United States*, 948 F.3d 376, 381 (D.C. Cir. 2020) (quoting *Abbasi*, 582 U.S. at 121). A "new context" has been construed broadly and encompasses any context "different in a meaningful way from previous *Bivens* cases decided by th[e] [Supreme] Court." *Abassi*, 582 U.S. at 122. Additionally, Congressional action has been recognized as an important special factor and the existence of an "alternate remedial scheme" counsels against extending a *Bivens* remedy. *See id.* at 137 ("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action.").

The Supreme Court has approved a *Bivens* cause of action in only three cases: *Bivens* (Fourth Amendment search and seizure violations), *Davis v. Passman* (Fifth Amendment gender discrimination claim), and *Carlson v. Green* (inadequate medical care for prisoners violating the Eighth Amendment). *See Abassi*, 582 U.S. at 128, 131. The Court finds that Plaintiffs' claims in this action arise in a new context. While Plaintiffs state a cause of action under the Fourth and Fifth Amendment like the plaintiffs in *Bivens* and *Davis*, respectively, "[a] claim may arise in a

29

new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez v. Mesa*, 589 U.S. 93, 103 (2020).

In *Bivens*, officers entered the plaintiff's apartment without a warrant and arrested and searched for narcotics without probable cause, *Bivens*, 403 U.S. at 389, and in *Davis*, the plaintiff claimed she was terminated by her employer based on sex, *Davis*, 442 U.S. at 230–31. Here, Plaintiffs' allegations of an illegal search and seizure of their data from federal data banks meaningfully differ to *Bivens* and *Davis*. *See also Hernandez*, 589 U.S. at 103 (noting the meaningful "difference between [the *Bivens*] claims and petitioners' cross-border shooting claims, where 'the risk of disruptive intrusion by the Judiciary into the functioning of other branches' is significant") (quoting *Abassi*, 582 U.S. at 140)). In *Bivens*, responding agents of the Federal Bureau of Narcotics entered the plaintiff's apartment without a warrant, conducted a search, and arrested him on narcotics charges—all without probable cause. *Bivens*, 403 U.S. at 388. By contrast, in this case, the USSS investigative agents were located hundreds of miles away from Plaintiffs, and allegedly conducted their work remotely by accessing information through databases from an office setting. That is an entirely different type of invasion.

Furthermore, Plaintiffs' Fourth and Fifth Amendment claims differ from the recognized *Bivens* claims because of the involvement of a "new category of defendants." *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001). The USSS officials differ from the narcotic officers in *Bivens* and the legislator in *Davis*, thus meeting the standard of a new context. Unlike the narcotics officers in *Bivens*, who enforced federal drug laws, the USSS operates under a separate statutory authority. *See* 18 U.S.C. § 3056; *see also Abbasi*, 582 U.S. at 140 (highlighting "the statutory or other legal mandate under which the officer was operating" as a key factor in identifying a "new context"); *Buchanan*, 71 F.4th at 1008; *Loumiet*, 948 F.3d at 382. This case

30

involves "different conduct by different officers from a different agency" with a distinct

mandate. *Cantú v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019). These differences suffice to meet

the "modest" threshold for establishing a new context. *Abbasi*, 582 U.S. at 147; *see also*

*Loumiet*, 948 F.3d at 382 (finding both the new defendant category and distinct statutory

mandate to be independent bases for identifying a new context). Because Plaintiffs' claims do

not fall within the three recognized *Bivens* contexts, extending a remedy here would be

inappropriate.[11] Accordingly, the Court finds that a *Bivens* remedy is not available in this action

and therefore dismisses Plaintiffs' claims against the John Doe agents for alleged constitutional

violations.[12]

---

[11] The USSS Director also argues that even if Plaintiffs' claims were sufficiently pled, the Court should decline to imply a *Bivens* remedy because the FTCA can serve as an alternate pathway for a money damages remedy. *See* USSS Director's MTD at 22–23. However, the Supreme Court has held that the FTCA does not constitute an alternative remedy in the *Bivens* context. *Carlson v. Green*, 446 U.S. 14, 15 (1980) ("There is nothing in the FTCA or its legislative history to show that Congress meant to pre-empt a *Bivens* remedy or to create an equally effective remedy for constitutional violations."). Regardless, the Court finds that it is unclear whether the FTCA even applies here, as it is uncertain whether the John Doe federal defendants had the statutory authority, or were USSS full agents, to fall within the scope of the FTCA. *See* 28 U.S.C. § 2680(h) (defining an "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law").

[12] If Plaintiffs intend to bring a *Bivens* claim against the USSS Director, the Court finds that they fail to allege that the USSS Director took any action that violated their constitutional rights. First, Plaintiffs do not rely on *Bivens* or the Constitution in Count V; it is simply a FOIA claim against the USSS Director in his official capacity. In Count VI, Plaintiffs only seek injunctive relief. Plaintiffs' claims are based on the USSS allegedly aiding the Austrian Defendants in their fraud investigation, alleging that USSS Agent Doe illegally searched and seized Plaintiffs' data, and alleging that the Federal Defendants' actions were improperly motivated by Plaintiffs' ethnicity. *See* Second Am. Compl. at 24–26. The USSS Director's role does not make him personally liable for his subordinates' alleged violations. Furthermore, Plaintiffs have not specified which personal action the USSS Director took against them. Without sufficient specificity into the alleged constitutional violations, Plaintiffs fail to state a claim upon which relief can be granted.

### 3.  Count V FOIA Claim

With respect to Count V brought pursuant to FOIA against the USSS Director in his official capacity, the USSS Director argues that Plaintiffs failed to name a proper party because they incorrectly named the agency head as a defendant when the federal agency itself is the proper party.  *See* USSS Director's MTD at 8–9.  The court has jurisdiction in FOIA claims to "enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B).  However, FOIA does not grant jurisdiction over individuals, even when the individuals are named in their official capacities.  *See Santini v. Taylor*, 555 F. Supp. 2d 181, 184 (D.D.C. 2008) (dismissing *pro se* plaintiff's FOIA claims for lack of jurisdiction to enforce FOIA against and agency head and department head sued in their official capacities); *Grand Marina Invs., LLC v. Internal Revenue Serv.*, No. 23-cv-1676, 2024 WL 4253095, at *4 (D.D.C. Sep. 20, 2024).  Because Plaintiffs named the USSS Director as a defendant in his official capacity, the Court lacks jurisdiction over Plaintiff's FOIA claim against the USSS Director.  However, considering that this is a curable defect, the Court will not dismiss the FOIA claim against the USSS Director on that basis and will instead move forward to consider the substance of the claim.

The USSS Director contends that, even if the correct party had been named, the records responsive to Plaintiffs' FOIA request are nonetheless exempt under FOIA Exemption 7(A).  *See* USSS Director's MTD at 9–10.  Although Plaintiffs do not respond to this argument, the Court will nonetheless consider the merits of the FOIA claim.  The purpose of Exemption 7(A) is to prevent disclosures that "might prematurely reveal the government's cases in court, its evidence and strategies, or the nature, scope, and focus of its investigations."  *Maydak v. U.S. Dep't of Just.*, 218 F.3d 760, 762 (D.C. Cir. 2000).  It also seeks to avoid situations where "litigants

[could] intimidate[e] or harass[] witnesses." *Id.* (citation omitted).  To determine whether withholding was proper under FOIA Exemption 7, courts apply a two-step test: (1) whether the records were "compiled for law enforcement purposes," and (2) whether they fall within a specific exemption; here, Exemption 7(A).  *FBI v. Abramson*, 456 U.S. 615, 622 (1982).

The first prong is satisfied when the agency shows "a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law."  *Campbell v. Dep't of Just.*, 164 F.3d 20, 32 (D.C. Cir. 1998) (internal quotation marks and citation omitted); *see also Keys v. Dep't of Just.*, 830 F.2d 337, 340 (D.C. Cir. 1987) (same).  Here, the USSS has satisfied the first prong.  As a threshold matter, "the Secret Service compiled the records at issue pursuant to its law enforcement function."  *See* USSS Director's MTD at 9; *see also* Decl. of Kevin L. Tyrrell ("Tyrrell Decl.") ¶ 12, ECF No. 41-2 ("[T]he records were created in connection with the Secret Service's statutory protective mission.").  This confirms that the information was gathered in furtherance of its statutory law enforcement responsibilities. Additionally, the records pertain to an ongoing Austrian law enforcement investigation involving Plaintiffs.  USSS Director's MTD at 10.  When a foreign investigative authority is involved in criminal proceedings concerning Plaintiffs, the resulting tie between the individuals/incidents and potential security risks or violations of U.S. federal law suffices to invoke FOIA Exemption 7(A).  *Bevis v. Dep't of State*, 575 F. Supp. 1253, 1255–56 (D.D.C. 1983) (finding that Exemption 7(A) covers such foreign law enforcement proceedings and that their involvement establishes the requisite connection).  In this context, it is noteworthy that this FOIA request further highlights that the claims center on a dispute with Austrian authorities concerning a criminal investigation involving Plaintiffs in Austria.  Importantly, this exemption "makes no

distinction between foreign and domestic enforcement purposes." *Bevis v. Dep't of State*, 801 F.2d 1386, 1388 (D.C. Cir. 1986). Thus, the USSS's participation in a cooperative international law enforcement matter and its withholding of records compiled in that context fulfill the requirements of the first prong under Exemption 7(A).

Under the second prong, the government must identify a "concrete prospective law enforcement proceeding" or one that is pending or reasonably anticipated. *Boyd v. Crim. Div. of U.S. Dep't of Just.*, 475 F.3d 381, 386 (D.C. Cir. 2007) (quoting *Bevis*, 801 F.2d at 1389). It must also show that disclosure "could reasonably be expected perceptibly to interfere" with that proceeding. *North v. Walsh*, 881 F.2d 1088, 1097 (D.C. Cir. 1989) (citation modified). The agency need not make a "specific factual showing with respect to each withheld document." *Agrama v. Internal Revenue Serv.*, 282 F. Supp. 3d 264, 273–74 (D.D.C. 2017), *aff'd*, No. 17-cv-5270, 2019 WL 2064505 (D.C. Cir. Apr. 19, 2019). Instead, courts may rely on "generic determinations" that disclosure of certain types of records during a pending case would generally cause interference. *Id.* The USSS has met the second prong by clearly identifying a pending law enforcement proceeding and demonstrating a risk of perceptible interference. The USSS invoked Exemption 7(A) to withhold information that, if released, might reasonably be expected to disrupt ongoing enforcement proceedings. *See* Tyrrell Decl. ¶ 16. The documents pertain to an active investigation involving Plaintiffs by Austrian law enforcement, who continue to pursue criminal charges against Plaintiffs and have requested that the records remain confidential to avoid jeopardizing the case. *Id.* This request from Austrian authorities supports the USSS Director's position that a concrete and ongoing law enforcement proceeding exists.

The Court also concludes that the potential harm resulting from disclosure of the USSS records at issue is reasonably foreseeable. The FOIA Improvement Act provides that "[a]n

agency shall withhold information . . . only if the agency reasonably foresees that disclosure would harm an interest protected by" one of FOIA's nine exemptions.  5 U.S.C. §§ 552(a)(8)(A), (i)(I).  This means agencies must show not only that a record "falls within a FOIA exemption," but also "that the agency 'reasonably foresees that disclosure would harm an interest protected by [the] exemption'" invoked.  *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020) (alteration in original) (quoting 5 U.S.C. § 552(a)(8)(A)(i)(I)).  To meet this "heightened" standard, *Jud. Watch, Inc. v. U.S. Dep't of Com.*, 375 F. Supp. 3d 93, 100 (D.D.C. 2019), agencies must "'identify[] specific harms to the relevant protected interests that [they] can reasonably foresee would actually ensue from disclosure of the withheld materials' and 'connect[] the harms in [a] meaningful way to the information withheld.'"  *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019) (third alteration in original) (quoting *Judicial Watch, Inc. v. U.S. Dep't of Just.*, No. 17-cv-832, 2019 WL 4644029, at *5 (D.D.C. Sep. 24, 2019)).  Congress echoed this requirement, stating: "[a]n inquiry into whether an agency has reasonably foreseen a specific, identifiable harm that would be caused by a disclosure would require the ability to articulate both the nature of the harm and the link between the specified harm and specific information contained in the material withheld." H.R. Rep. No. 114-391, at 9 (2016).  Agencies must go beyond "nearly identical boilerplate statements" and avoid "generic and nebulous articulations of harm."  *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 106 (quoting *Judicial Watch*, 2019 WL 4644029, at *4–5).

First, the records at issue were compiled as part of the USSS's cooperation with an ongoing foreign criminal investigation—an Austrian prosecution involving Plaintiffs—and include sensitive law enforcement information obtained pursuant to international law enforcement collaboration.  The Austrian authorities have explicitly requested that the materials

remain confidential, and they also confirm that premature disclosure could jeopardize the investigation by revealing information about the scope and direction of the case. *See* Tyrrell Decl. ¶ 16. This is not a speculative harm. The interference is both concrete and imminent: disclosure would reveal investigatory techniques, cooperation strategies, and potentially the identity or role of individuals involved, any of which could compromise Austria's ability to effectively investigate and prosecute criminal conduct.

Second, the connection between the harm and the information withheld is direct. The documents concern not only Plaintiffs, but they also concern the broader contours of a foreign criminal investigation, which remains active. *Id*. ¶ 16. "Interference" with an investigation includes the risk that subjects of the investigation will adjust their behavior or prepare defenses prematurely, and that cooperative foreign law enforcement efforts may be chilled if sensitive material is disclosed through FOIA. *See North*, 881 F.2d at 1097. Here, the potential harms include Plaintiffs gaining insight into investigatory targets, witness identities, or the lines of inquiry being pursued by Austrian authorities. This would plainly "perceptibly interfere" with the proceedings. *Boyd*, 475 F.3d at 386.

The USSS's rationale is consistent with the core aim of Exemption 7(A), which is "to prevent disclosures which might prematurely reveal the government's cases in court, its evidence and strategies, or the nature, scope, direction, and focus of its investigations, and thereby enable suspects to establish defenses or fraudulent alibis or to destroy or alter evidence." *Maydak*, 218 F.3d at 762 (citation omitted). Furthermore, it is foreseeable that disclosing the USSS records at issue would result in harm. Thus, even without "a specific factual showing with respect to each withheld document," *Agrama*, 282 F. Supp. 3d at 273–74, the USSS has provided a sufficiently detailed explanation to justify withholding the records under Exemption 7(A).

4.  Count VI Fifth Amendment Claim

Next, the USSS Director argues that Plaintiffs fail to plead sufficient facts to state a claim in Count VI.[13]  USSS Director's MTD at 15–17.  In Count VI, Plaintiffs seek "preliminary and permanent injunctive relief," alleging that the Federal Defendants' investigation and aid to the Austrian Defendants violated their procedural due process rights.  Second Am. Compl. at 27–28.  When injunctive relief is sought, a plaintiff "must show he is suffering an ongoing injury or faces an immediate threat of [future] injury."  *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)).  However, a mere "possibility" of future harm is insufficient.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21–22 (2008); *see also* 11A Wright & Miller's Federal Practice & Procecure § 2942 (3d ed. 2025) ("There must be more than a mere possibility or fear that the injury will occur.").  Actions seeking declaratory judgments must meet Article III's case-or-controversy requirement, meaning that the remedy must address the specific injuries suffered by the individual plaintiffs.  *California v. Texas*, 593 U.S. 659, 672 (2021).  Here, Plaintiffs' ability to obtain permanent injunctive relief depends on whether there is a showing of imminent future harm.

At no point in their Second Amended Complaint or their opposition brief did Plaintiffs contend that they met the criteria for a permanent injunction, including identifying a real risk of future harm.  *See, e.g.*, Second Am. Compl. at 27–28 (alleging that they are entitled to preliminary and permanent injunctive relief because the USSS agents' actions violated the Fourth and Fifth Amendments); Pls.' Opp'n to USSS Director's MTD at 7–17 (arguing that

---

[13] Plaintiffs title their Count VI claim against the USSS Director as "Federal Constitutional Claim—Violation of procedural Fourth and Fifth Amendments Due Process." Second Am. Compl. at 27.  The right to due process is established under the Fifth Amendment, not the Fourth Amendment, but the Court will construe this claim as a procedural due process claim under the Fifth Amendment.  *See* U.S. Const. amend. V.

Plaintiffs have standing to pursue a Fifth Amendment procedural due process claim). Plaintiffs do not address the legal standard for a permanent injunction or any of the criteria that must be satisfied. Instead, Plaintiffs address the elements for standing and reiterate the factual allegations surrounding their Fifth Amendment claim based on actions that took place long ago, which is only one step of the analysis. Ending their arguments with "Plaintiffs are likely to be redressed by an order ordering an injunction against [] Defendant in an official capacity and awarding monetary damages to [t]hem from the government[] Defendants John Doe(s) sued in personal capacities" is insufficient without providing a basis for permanent injunction. *See* Pls.' Opp'n to USSS Director's MTD at 17. "[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021) (citations omitted). Plaintiffs neither allege nor address such future harm here. Because Plaintiffs have made no effort to plead that they have met those criteria, the Court is unable to grant them the requested injunctive relief. Therefore, Count VI must be dismissed.[14]

---

[14] Because there are sufficient grounds to dismiss all of Plaintiffs' claims on other bases, the Court need not reach the arguments regarding collateral estoppel or venue.

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment (ECF No. 47) is **DENIED**; the Austrian Defendants' Motion to Dismiss (ECF No. 32) is **GRANTED;** the USSS Director's Motion to Dismiss (ECF No. 41) is **GRANTED**; Plaintiff's Motion to Compel (ECF No. 34) is **DENIED**; Plaintiff's Requests for Subpoenas to Issue (ECF No. 38) is **DENIED**; Defendant Rowe's Motion to Stay (ECF No. 43) is **DENIED**; the USSS Director's Motion to Stay (ECF No. 52) is **DENIED**; and Plaintiff's Motion to Strike the Austrian Defendants' Response (ECF No. 53) is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  August 27, 2025                                  RUDOLPH CONTRERAS
                                                         United States District Judge